MANUEL LEDESMA DÁVILA, ADMINISTRADOR DE INQUILINATO DE PUERTO RICO, peticionario, *v.* TRIBUNAL DEL DISTRITO JUDICIAL DE SAN JUAN, HON. JOSÉ M. CALDERÓN, JUEZ, demandado; LUIS C. CUYAR, interventor.

Núm. 20.—*Sometido:* Enero 9, 1950. *Resuelto:* Marzo 24, 1950.

*Manuel Ledesma Dávila, pro se; F. Fernández Cuyar,* abogado del arrendador, interventor ante este Tribunal; *J. Jiménez Aguayo,* abogado de los arrendatarios, interventores en el tribunal inferior.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El 20 de julio de 1948 el Administrador de Inquilinato, aquí peticionario, dictó las órdenes números IA–1735 e IA–1737 de la Administración de Inquilinato, decretando rebajas en los alquileres de dos locales comerciales del aquí interventor, Luis C. Cuyar, de $200 a $127 cada uno, efectivas dichas rebajas el 1ro. de agosto del mismo año. No conforme, acudió Cuyar en revisión al Tribunal del Distrito Judicial de San Juan, el cual dictó sentencia el 26 de mayo de 1949 anulando las órdenes de referencia. Para revisar dicha actuación expedimos el auto de *certiorari.*

La cuestión a resolver en este recurso es si el Administrador de Inquilinato tiene autoridad, bajo la Ley 201 de

14 de mayo de 1948, enmendatoria del artículo 6 de la Ley de Alquileres Razonables—núm. 464 de 25 de abril de 1946 —para hacer las aludidas rebajas, efectivas en fecha posterior a la aprobación de dicha Ley 201, en los cánones de arrendamiento de locales comerciales que a virtud del artículo 24 de la referida Ley 464, estaban exentos de la reglamentación sobre control de alquileres mientras durara la emergencia decretada por dicha ley.

En *Aponte* v. *Tribunal de Distrito*, 68 D.P.R. 839, se planteó la controversia de si los locales comerciales del Sr. Cuyar, objetos del presente pleito, estaban o no exentos de la reglamentación sobre control de alquileres, por virtud de las disposiciones del artículo 24 de la Ley de Alquileres Razonables, que eximía de dicha reglamentación "toda propiedad de alquiler para negocios y propósitos comerciales e industriales que empiece a edificarse efectivamente en o después del día primero de enero de 1946, y que se termine dentro del término de un año a contar de esa fecha. . .". Resolvimos que dicho artículo no excluía de sus disposiciones aquellos casos en que—como el de los locales del Sr. Cuyar— se había aumentado la propiedad de alquiler para negocios y propósitos comerciales al reconstruirse una propiedad ya existente sin eliminar los apartamientos residenciales que en dicha propiedad existían, ya que éstos habían sido trasladados a una tercera planta, construída sobre la anterior edificación. En consecuencia, sostuvimos en dicha ocasión al tribunal inferior al anular dos órdenes del Administrador de Inquilinato, de fecha 14 de agosto de 1947, por las que dicho funcionario decretó rebajas en los alquileres de los referidos locales.

Aun cuando a la fecha de nuestra decisión en el caso de *Aponte*—25 de mayo de 1948—ya estaba en vigor la Ley 201 de 14 de mayo de 1948, no consideramos que dicha ley afectara la resolución del mismo. Así dijimos en la nota (3) de la opinión, pág. 845:

"Tenemos conocimiento de que el 15 [sic] de mayo de 1948 se aprobó la Ley núm. 201 para tener efecto inmediato. Dicha ley, al enmendar el artículo 6 de la Ley núm. 464 de 1946, según enmendado por la Ley núm. 37 de 1947, dispone, en lo pertinente, que 'Ninguna mejora capital, ni la reconstrucción del edificio, ni la conversión de una vivienda en local comercial o de un local comercial en vivienda, se considerará nueva edificación a los efectos del artículo 24 de esta Ley'.

"Aceptando, sin resolverlo, que esta enmienda pueda tener el alcance de autorizar al Administrador a fijar el alquiler de los locales aquí envueltos, el presente caso no queda afectado. Las órdenes dictadas por el Administrador el 14 de agosto de 1947, son nulas por no estar autorizadas por la ley vigente en dicha fecha."

Fué luego de aprobada la Ley 201 antes citada y de resuelto el caso de *Aponte*, que el Administrador de Inquilinato, fundándose en que la indicada ley sometía a la reglamentación sobre el control de alquileres los locales comerciales del aquí interventor, emitió sus órdenes de 20 de julio de 1948 decretando rebajas en los cánones de arrendamiento de dichos dos locales. La corte inferior, al anular dichas órdenes se fundó en que la Ley 201 de referencia no tenía efecto retroactivo, mientras el Administrador, al aplicarla, le daba tal efecto, pues con ellas tendía a anular la exención obtenida por el aquí interventor—antes de la aprobación de dicha Ley 201—bajo las disposiciones del artículo 24 de la Ley de Alquileres Razonables.

El Administrador de Inquilinato, aquí peticionario, sostiene que los locales comerciales del interventor quedaron sujetos al control de alquileres desde la fecha de la aprobación de la Ley 201, o sea el 14 de mayo de 1948, ya que la exención de que los mismos gozaban bajo el artículo 24 de la Ley de Alquileres Razonables fué eliminada por acción legislativa, siendo esta acción perfectamente válida; y que al decretar una rebaja en los cánones de arrendamiento de dichos locales, había aplicado la ley prospectivamente y no retroactivamente.

El interventor, por su parte, sostiene que nada en la Ley 201 revela intención alguna de la Asamblea Legislativa de destruir la exención concedídale originalmente por el artículo 24 de la Ley de Alquileres Razonables.

El artículo 24 de la indicada ley, a cuyo amparo los locales del interventor fueron declarados exentos de reglamentación, disponía originalmente, en lo pertinente, lo que sigue:

"Con el propósito de estimular el programa de construcciones en Puerto Rico, por la presente se declara exenta de las disposiciones de esta Ley en cuanto al importe del canon a cobrarse durante la emergencia, toda propiedad de alquiler para negocios y propósitos comerciales e industriales que empiece a edificarse efectivamente en o después del día primero de enero de 1946, y que se termine dentro del término de un año a contar de esa fecha, a menos que el Administrador, por causa justificada, prorrogare dicho término por un período que en ningún caso excederá de un año adicional."

. Dicho artículo no incluía expresamente las mejoras capitales, las reconstrucciones ni las conversiones de viviendas en locales comerciales ni de locales comerciales en viviendas. Fué interpretando liberalmente dicho artículo que llegamos a la conclusión en el caso de *Aponte* que sus disposiciones eran extensivas a aquellos casos de reconstrucciones o mejoras capitales que, sin limitar los locales de vivienda, proveían locales adicionales comerciales, aunque no se tratara de nuevas edificaciones en sí. Fué, sin duda, en vista de la contienda judicial trabada en el caso de *Aponte* en cuanto al alcance del artículo 24, que la Asamblea Legislativa aprobó la Ley 201. Evidentemente la Legislatura quiso dar a dicho artículo el alcance que el Administrador de Inquilinato le había dado desde el principio, y no dejar el mismo expuesto a interpretación por la rama judicial, en la forma en que ya un tribunal inferior lo había hecho. En ese sentido, la Ley 201 es un estatuto interpretativo especial, 2 Sutherland *Statutory Construction*, sec. 3004, pág. 225, que fué aplicado en forma prospectiva por el Administrador. Siendo una función propia del poder legislativo el determinar qué

clase de propiedades va a someter al control de alquileres, *Woods* v. *Miller Co.*, 333 U. S. 138, 92 L. ed. 596, la Legislatura podía someter a dicho control cualesquiera clases de propiedades que previamente hubiere eximido de reglamentación. Al aprobar la Ley 201, la Legislatura no destruyó derechos adquiridos del interventor. Tampoco violó contrato alguno, ya que las exenciones del artículo 24 no se concedieron en virtud de relación contractual alguna con los dueños de las propiedades exentas originalmente del control de alquileres. Y en su aplicación, el Administrador, al decretar rebajas en los cánones de arrendamiento para tener efecto en fecha posterior a la de vigencia de la Ley 201, lo hizo en forma prospectiva. No encontramos base alguna para la conclusión de la corte inferior de que la actuación del Administrador tuvo el alcance de dar efecto retroactivo a dicha ley. El índice para determinar el carácter retroactivo de la Ley 201 no es la clase de propiedades a que la misma se aplique, sino la fecha desde la cual se controlan los alquileres de dichas propiedades. El interventor no sostiene que la Legislatura no podía eliminar la exención hecha en la ley original, que por interpretación judicial le fué reconocida. Tampoco predica su impugnación a las órdenes del Administrador en que se violaron derechos adquiridos ni relaciones contractuales. Su punto de apoyo, como indicamos, es que nada en la Ley 201 hay que pueda indicar la intención legislativa de afectar las exenciones concedidas por el artículo 24 hasta la fecha de la aprobación de dicha ley. La dificultad con este argumento es que tal intención no tiene que expresarse con palabras expresas, pues ésa es la única finalidad y efecto legal de la acción legislativa y el único objetivo que, por la naturaleza y propósito básico de la legislación envuelta, tiene la Ley 201. Es precisamente lo contrario de lo que sostiene el interventor. Si la Asamblea Legislativa hubiera deseado reservar la exención a los locales comerciales exentos bajo la anterior legislación, así hubiera tenido que hacerlo expresamente.

Constituyendo las órdenes dictadas por el peticionario el 20 de julio de 1948, por las que decretó rebajas en los cánones de arrendamiento de los locales comerciales del interventor, un válido ejercicio de sus facultades bajo la ley, *procede revocar la sentencia dictada por el tribunal inferior el 26 de mayo de 1949 y dictar otra en su lugar confirmando las órdenes de referencia.*