In the Matter of 104 BLEECKER STREET CORPORATION, Appellant. FRED POTLOW, Doing Business as ACME HATTERS SUPPLY CO., et al., Respondents.

First Department, June 8, 1954.

258

Lester W. Rubin for appellant.

Irving Seidman for respondents.

DORE, J. P. Landlord, petitioner, appeals from parts of a final order of Special Term after trial in a proceeding to fix the fair and reasonable rent of tenants-respondents in a six-story loft building owned by the landlord at 104-6 Bleecker Street, New York, New York, pursuant to section 4 of the Commercial Rent Law of the State of New York. Tenants-respondents did not appeal or file brief.

The order granted a straight 10% increase in the rent of each of the tenants retroactive to the date of the petition, but in our opinion failed to grant the proper increases provided by law and supported by the landlord's evidence.

In the loft building in question there are ten tenants each occupying a single floor with the exception of the ground floor or street floor which is occupied by four tenants; one tenant rents the entire basement and subbasement. Of the six tenants-respondents, four occupy portions of the ground floor and two occupy respectively the fourth and fifth floors. The sixth floor is leased by the landlord under a lease that had not expired providing for a rent of $6,000 per annum and that tenant and floor is not involved in this proceeding. The landlord also settled with the second and third floor tenants and the basement tenant and they are not involved in the appeal.

Originally brought as an alternative proceeding under subdivision 2 of section 4, the landlord moved at trial to change this to a subdivision 1 proceeding. The court below decided the proceeding under the provisions of subdivision 1 and sufficient proof was presented to enable the decision to be made under that subdivision.

In our opinion the trial court committed serious prejudicial errors, the corrections of which require substantial modification of the order appealed from under the Commercial Rent Law (L. 1945, ch. 3, § 4, subd. 1, as amd. by L. 1953, ch. 451, eff. April 2, 1953).

The assessed valuation of the property in effect at the time of the trial, for the year 1953-54 was $165,000, $43,000 of which was attributed to the land. Nevertheless, the trial court fixed the total valuation at $130,000, allowing $43,000 to the land and $87,000 to the building. That valuation was the assessment for the years 1949-50, three years prior to the date of this proceeding. The court should have adopted the current assessment of $165,000 as the presumption created by act was supported and not overcome by the proof. The court apparently took the lower figure because the building was over sixty years old. However, in such circumstance the court should not have reduced " the latest completed assessment," (§ 4) but rather should have reduced the rate of return from the presumptive 8% to 6%. (*Matter of Murphy* [*Blasio*], 278 App. Div. 814, 815.)

Finding that the rents received at the commencement of the proceeding were insufficient to provide a reasonable return, the trial court provided a flat 10% increase against all tenants.

We find no basis in the act or the cases to support such method of apportionment. Under the statute, the court should first determine the amount required for a reasonable return and then allocate to the rental area involved its fair and reasonable proportion of the gross rents from the commercial space in the building. If the share allocable to the space is less than the tenant is paying, the tenant's rent may not be increased; whereas, under the trial court's formula, such tenant would be required anyhow to pay an additional 10%. The allocation should be corrected as herein indicated.

The trial court also erred with respect to the operating expenses allowed. The bill of particulars based on the expenses for 1952, showed wages paid amounting to over $10,913.59; but since 1952, and at the time of trial a new collective bargaining agreement had been entered into which increased the annual wages by $942.82 more than they had been in 1952. Taxes also had increased by $1,269. The trial court accepted the 1952 figures without allowing these increases. We have held that when it is established that the cost of allowable items of expenses have increased since the base year, such increase should be considered and given effect. (*Matter of Stabler* [*Knox Studios*], 275 App. Div. 799, 800.)

The court also erred in eliminating reasonable management and leasing commissions amounting to the sum of $1,258.82. These were allowable items as well as an item of $33.75, the greater portion of which was for Realty Advisory Board dues.

The trial court also amortized $365 for painting, $270.45 for plumbing, $1,195.75 for repairs and $1,806.33 representing amortization for repairs made in a prior year; the court lumped all of these items together and then allowed one third of the total as expenses. This was error. The painting and plumbing items were not structural repairs or permanent alterations but represented annual recurring repairs, expenses of an old building that needs constant repair. No proof was offered that the repairs were of a structural or permanent nature, or that the amounts were excessive or that they should be amortized. The reamortization of $1,806.33 was clearly improper as that item involved repairs made in a prior year, the cost of which had been amortized on the basis of the life of the particular repair. In reamortizing that amortization, the trial court extended the time for recoupment, but could not extend the life use of the repair. Restoring the items hereinabove discussed, we find the allowable expenses to be $28,714.84 instead of $22,785.43 allowed by the trial court. Adding $28,714.84 to

$9,900, 6% of the assessed valuation of $165,000, the total amount necessary to produce a reasonable return is $38,614.84 allocable to the various rentable areas in the building.

There was believable testimony that the rental value of each of the floors above the ground floor was the same, that the value of the street floor was double that of one of the upper floors, and that the basement and subbasement space should be assigned the same value as the upper floors. On this testimony, we find that the first floor should contribute 25% of the total rents necessary to produce a reasonable return; the basement and subbasement 12½% and each of the relevant upper floors 12½%. On the basic figure of $38,614.84 necessary to produce a reasonable return, 12½% or $4,826.85 should be allocated to each of the relevant floors from the second and also to the basement and subbasement space; 25% or $9,653.71 is allocable to the ground floor space apportioned on a percentage basis to each of the four tenants on that floor. The order to be modified affects only the tenants on the fourth and fifth floors and the four tenants on the ground floor as the sixth floor is under an unexpired lease, and the brief of landlord states without contradiction that settlements have been made with the tenants on the second and third floors and basement space. Such tenants are disregarded in the computation for the purpose of the order to be entered.

Applying the figures as indicated, we are obliged to fix the rents as follows:

| Tenant | Rental |
| --- | --- |
| Fourth Floor | $4,826.85 |
| Fifth Floor | $4,826.85 |
| Fred Potlow | $2,007.97 |
| Saratoga Natural Mineral Waters | $3,214.69 |
| Morris Price | $1,534.94 |
| W. E. W. Buttonhole Co. Inc. | $2,896.11 |

The order appealed from should be modified accordingly and as so modified affirmed, with one bill of costs to the landlord-appellant against respondents. Settle order.

COHN, CALLAHAN, BASTOW and BOTEIN, JJ., concur.

Order unanimously modified in accordance with the opinion herein and, as so modified, affirmed, with one bill of $20 costs and disbursements to the landlord-appellant against the respondents. Settle order on notice.