In the Matter of TRESHOMO REALTY Co., INC., Petitioner, v. SANTINI BROS., INC., Respondent.

Supreme Court, Special Term, Queens County, April 26, 1962.

*Philip L. Wiener* for petitioner. *George Mutterperl* for respondent.

Anthony M. Livoti, J. Motion to confirm the report of Honorable Samuel S. Tripp, Special Referee, dated March 16, 1962.

The report and recommendations are as follows:

" By an order dated March 1, 1962, made by the Honorable Anthony M. Livoti, a Justice of this court, upon the stipulation of the attorneys for the respective parties dated the same day, the original order of said Justice, dated October 10, 1961, referring this proceeding to an Official Referee to hear and determine, was modified to the extent of referring the issues to the undersigned to hear and report with recommendations.

" Testimony was taken on March 1 and 14, 1962. The landlord petitioner appeared by Philip L. Wiener, Esq., and the tenant respondent by George Mutterperl, Esq. The minutes of the hearing were taken by an official stenographer, but the transcript thereof was waived by both sides.

" This is a proceeding under section 4 of the Emergency Commercial Space Rent Control Law (L. 1945, ch. 3, as amd.), to determine the reasonable rental value of premises 36-01 Queens Boulevard, Long Island City, occupied by one tenant, the respondent herein. The premises are located at the northeast corner of Queens Boulevard and 36th Street, Long Island City. The plot, 60 feet by 95 feet, is improved by a modern four-story and basement reinforced concrete, fireproof loft building, equipped with a freight elevator and sprinkler system. It contains 28,500 square feet of space and each floor has a gross area of 5,700 square feet. The building has 240 watt electric service with 3 phase 60-cycle alternating current. It is within some 500 feet of the Rawson Street dual subway station and other transit facilities connect the locality with all parts of the Greater City of New York.

" The land was acquired by petitioner in 1923 by private sale for $12,000 and the building was erected in 1924, at a cost of

$103,000, exclusive of architect's fees. For the last 28 or 29 years, the entire building has been occupied by the respondent as a storage warehouse and, at its request, the sprinkler system was disconnected about 10 or 12 years ago.

" The rent for the entire premises, as of March 1, 1943, was $7,980 per annum. The respondent now pays emergency rent fixed by agreement dated May 1, 1947, in the sum of $14,250 per annum together with the increase of New York City real estate taxes over the years 1946–1947, which, in 1960, amounted to $2,332.90, making a total of $16,582.90 or $1,381.90 per month. This is the only income that the petitioner derives from the property. The respondent pays for heat, interior repairs and water and sewer charges; the petitioner, for all exterior maintenance and repair of the building, of the steam boiler and structural defects in the elevator.

" Contending that the emergency rent of $16,582.90 per annum is not fair and reasonable, petitioner looks for $25,083.65 per annum, or $2,083.65 per month, inclusive of the tax increase for the year 1960, as the fair and reasonable rental value of the premises demised to the respondent. This amount is predicated upon the claim that the fair value of the land and building on August 28, 1961, when this proceeding was commenced, was $220,000, upon which a reasonable net annual return of 8% would produce $17,600; that to this should be added the total sum of $7,403.81, the cost of maintenance and operation of the building during 1960, consisting of the following items:

1. Taxes (including $2,332.90 paid by respondent).. $4,260.00
2. Fire Insurance ............................. 99.16
3. Management ................................ 600.00
4. Replacements and Repairs (as per Schedule A hereto annexed) ........................... 2,259.65
5. Accounting ................................ 175.00
6. Inspection of elevators...................... 10.00

" Since this proceeding is brought pursuant to subdivision 1 of section 4 of the Emergency Commercial Space Rent Control Law upon the ground that the gross rental from the entire building is insufficient to yield a fair return to the landlord (*Matter of Jewelry Center Co.,* 279 App. Div. 1041), the main issues to be determined are (1) the fair value of the entire property and (2) the cost of maintenance and operation.

" A net annual return of 8% on the fair value of the entire property including the land, after meeting the cost of maintenance and operation, is presumed to be a reasonable return (see *Matter of Rutherford* [*Dorman Prods.*], 95 N. Y. S. 2d 658, 660,

mod. on other grounds 277 App. Div. 1, affd. 301 N. Y. 767) and there is no limitation as to the amount of increase that may be allowed where, as here, the proceeding is under subdivision 1. (*Matter of Jewelry Center Co., supra.*)

" The assessed valuation of the subject property for the years 1960–1961 and 1961–1962 is the sum of $25,000 for the land and $75,000 for the building, a total of $100,000. While such valuation, including land and building, shown by the latest completed assessment-roll of the city, is to be taken as the presumptive fair value of the premises, the statute provides that ' other lawful evidence of the fair value may be offered and received.' Such other evidence was here offered both by the petitioner and the respondent through their respective expert witnesses who testified as to the value of the property. Petitioner's expert, George C. Johnston, Jr., appraised the property for a total of $220,000 — $45,000 for the land and $175,000 for the building. Respondent's expert, Calvin L. Greenberg, appraised the property for a total of $172,000 — $22,800 for the land, $145,700 for the building and $3,500 for commissions. In view of the foregoing testimony the statutory presumption that the assessed valuation of the entire property represents its fair value must give way to the preponderance of proof with respect to value adduced by the experts.

" Upon the basis of such proof, it is my opinion that a finding should be made that the value of the land is $28,500 and of the building $165,000, or a total of $193,500. The respondent's expert admitted that the building is an adequate improvement of the plot in question taking the area into consideration and consequently a finding should be made that the building is a sufficient improvement on the land. Therefore, under the statute, the petitioner is entitled to a net annual return of 8% on the fair value of the entire property or the sum of $15,480. To this sum should be added the cost of maintenance and operation as hereinafter set forth, excluding amortization or interest paid on a $9,000 mortgage on the property held by the Long Island City Savings Bank.

" No issue was raised by the respondent with respect to the following items of cost of maintenance and operation:

| | |
|---|---:|
| Taxes | $4,260.00 |
| Fire Insurance | 99.16 |
| Management | 600.00 |
| Accounting | 175.00 |
| Inspection of elevators | 10.00 |
| Total | $5,144.16 |

"Respondent, however, objected to the replacements and repairs totaling $2,259.65 listed in the bill of particulars as expenses for 1960, contending that the component items should be amortized and an allowance made as part of the cost of maintenance and operation during that year in proportion that each item bears to the probable life thereof. Petitioner argues, however, that there is no authority for such amortization since the statute speaks of ' the cost of maintenance and operation of the building   *   *   *   during the preceding year   *   *   * '; that should the component items embraced in the foregoing sum be amortized in full or in part, then by the same token, an allocation as an expense during 1960 should be made in proportion to the life of the new roof and flashings, the coating of the bulkhead in the elevator shaft and the installation of a new copper leader for which, according to the bill of particulars, $1,600 was expended in 1958.

" It is now settled that nonrecurring items of cost of maintenance and operation may be allocated to the year preceding the application, proportionate to the probable life of the particular item of improvement or repair. (*Schack* v. *Handel,* 271 App. Div. 1, 6.) In considering several repair items in a commercial rent proceeding that were of an extraordinary nature which would not recur annually, the court said ' The probable life of improvements having some degree of permanency should be considered in fixing the amount to be charged as expenses for such items for a particular year.' See also *Matter of Broaduane Corp.* (137 N. Y. S. 2d 112) and *Matter of Turansky* (137 N. Y. S. 2d 731), in which the court amortized the cost of a number of items of repair and replacement proportionate to the probable life of each.

" Since expenses of a nature which would not ordinarily recur annually may be amortized when incurred during the year preceding the application, it is as reasonable and logical to permit an allowance as an expense for such year the proportionate cost of similar repairs or replacements made during a prior year provided, of course, that the life use thereof is not thereby extended. In *Matter of 104 Bleecker St. Corp.* (284 App. Div. 257, 260) the trial court amortized $365 for painting, $270.45 for plumbing, $1,195.75 for repairs and $1,806.33 representing repairs made in a prior year. These items were then lumped together and one third of the total allowed as annual recurring expenses of an old building in need of constant repair since no proof was offered that the items were of a structural or permanent nature or that the amounts were excessive or that they should be amortized. As to the reamortization of the $1,806.33 for

repairs made in a prior year, the Appellate Division held that this ' was clearly improper as that item involved repairs made in a prior year, the cost of which had been amortized on the basis of the life of the particular repair. In reamortizing that amortization, the trial court extended the time for recoupment, but could not extend the life use of the repair.' I am of the opinion that the allowance of a proportionate part of the $1,600 expended in 1958 as an expense for 1960 will not, in light of the nature of the items involved, extend the probable life use thereof.

"While both attorneys took exception to my views with respect to amortization, as aforesaid, they stipulated on the record in lieu of proof the probable life use of the several items involved. Petitioner's attorney then requested that additional items of expense incurred during prior years should likewise be amortized, but upon objection by the attorney for the respondent, I rejected such claim since it was not embraced in the bill of particulars as was the total item of $1,600.

"It was agreed that $1,200 of the $1,600 listed in the bill of particulars for 1958 represented the cost of a new roof and flashings and that the probable life expectancy thereof as of 1958 was 10 years; that the balance of $400 represented the other items of expense during that year, the probable life of which was five years. Thus a total of $200 must be considered as an expense for 1960.

"With respect to the installation in 1960 of a Kalamein door with hardware for $159.65, it was agreed that the probable life expectancy thereof was 10 years and accordingly $15.97 should be allocated to the year 1960.

"With respect to the $2,100 expended in 1960 for the other work described in the bill of particulars, it was agreed that the life expectancy of all of said work was seven years. Accordingly the sum of $300 should be allocated to the year 1960.

"The foregoing amortization, totaling $315.97, when added to the other expenses during 1960 of $5,144.16, results in a total cost to the petitioner of maintenance and operation for said year in the sum of $5,660.13, which when added to the net annual return of 8% on the fair value of the entire property results in a total allowable return of $21,140.13.

"Since it was stipulated on the record that whatever allowable return may be determined in this proceeding shall be over and above the cost of heating, interior maintenance of the premises and water and sewer charges, which respondent shall continue to pay as heretofore, I recommend that the fair and reasonable rent for the premises occupied by the respondent as of the date of the application herein — August 28, 1961 — be fixed

in the sum of $21,240.13 per annum, payable in equal monthly installments."

The recommendations of the Special Referee are adopted for the reasons stated in said report, which is in all respects confirmed.