Harry B. Frank, J.
This is a proceeding under the alternative method provided by subdivision 2 of section 4 of the Commercial Bent Law (L. 1945, ch. 3, as amd.) for an order fixing the reasonable rental value of the space occupied by the several tenants-respondents based on the fair rental value per square foot of the space occupied. On the trial, the proceeding was discontinued with respect to two of the tenants, namely, George Lesser, Inc. and Morris Schachter & Co., Inc.
The premises involved, No. 1 West 39th Street, consist of a 34-year-old, 12-story limestone and brick fireproof loft building with a basement, located on the north side of West 39th Street near Fifth Avenue, in the heart of the millinery district. The dimensions of the plot are 116.8 feet by 98.9 feet, and the building fully covers said plot although it is set back several feet on the upper levels. The total net rentable space of the building is 123,559 square feet.
The main issues of fact ordinarily to be determined in such proceedings in order to apply the statutory formula are: (1) the fair value of the property; (2) the cost of maintenance and operation; and (3) the relative rental values of various rental spaces in the building.
In this case, while most of the items of maintenance and operation were contested on the trial, counsel for all parties stipulated thereafter that, for the purposes of this proceeding, the cost of maintenance and operation for the base year is set at. the sum of $106,763.08 (see stipulation on file herein). There *151 fore, the court will use this figure in its application of the statutory formula.
With respect to the relative rental values of the space, the only such evidence submitted was that offered by the tenants’ expert witness, Myron Meltzer, who testified as to the relative rental values of all the space in the building (see Matter of Barry Equity Corp. [Marcia Hat Co.], 276 App. Div. 685). His testimony on this point was uncontradicted, and I accept his allocations.
The major contested issue in this proceeding is the determination of the fair value of the property. While the statute itself (§ 4, subd. 1) provides that the assessed valuation of the entire property, including land and building, as shown by the latest completed assessment roll of the city, shall be presumed to be the fair value of the premises, it also permits other lawful evidence of the fair value to be offered and received. While unquestionably the court would be bound to accept the assessed valuation if no other evidence with regard to value of the property were presented (see Matter of 104 Bleecker St. Corp., 284 App. Div. 257), such was not here the case.
Looking- to the assessment history of the property we find that the assessed value in effect at the time of trial for the year 1957-1958 was $900,000. For the year 1956-1957 the assessed value was $975,000 — a reduction from the preceding year. The landlord had applied for reductions of the assessed valuation for both years and the evidence indicates that the said reductions for the years 1956-1957 and 1957-1958 were granted for the purpose of temporary tax relief. Certainly the record is barren of any evidence to indicate that the actual value of the property had decreased over $100,000 in a two-year period — which period was one of generally rising values. The assessment history of the property indicates that the latest assessed value is not reflective of the true value of the property.
While it is true that the landlord in seeking the reductions in assessment asserted that the value of the property was $800,000, in evaluating the evidentiary import to be attached to such statements we must look to the context in which they were made, and while they are admissions against interest in this case, I do not think that such statements can be considered as evidence of the real value of the property (cf. Matter of Broaduane Corp., 137 N. Y. S. 2d 112; Zellner v. Brooklyn Trust Co., 70 N. Y. S. 2d 114).
The other evidence indicates that the petitioner acquired control of the property in February, 1956 by purchase of almost *152 two thirds of the total shares of stock of the corporation at $15 per share, for a total of $187,620. At that time there were mortgages totaling $1,260,000 on the property. The landlord contends that the value of the property is $1,548,285, attributing a value of $15 to each share of the total 19,219 shares. This argument is untenable and also not reflective of the fair value of the property since the purchase of stock for control of a corporation involves considerations other than value of the property. It is not the purpose of this statute to insure the landlord a return on speculative transactions or to insure him a fair return on unwise investments (see Steinberg v. Forest Hills Golf Range, 303 N. Y. 577).
Both sides presented expert witnesses who testified as to the value of the property. The landlord petitioner presented as experts Norman F. Levy, a vice-president of Cross & Brown, an established real estate firm in New York City, and Mr. Alexander Weber, a real estate owner, agent and operator of comparable properties. Mr. Levy testified that the value of the property was $1,500,000, and Mr. Weber that it was worth between $1,400,000 and $1,550,000 and, more specifically, $1,510,000.
The tenants’ expert, Mr. Meltzer, who indicated that he had extensive experience in testifying in certiorari proceedings for the City of New York, valued the property at $900,000, the same figure as the latest assessment valuation. His breakdown of this figure with regard to the relative values of the land and building also coincides with that of the assessed valuation. It was apparent to me that Mr. Meltzer’s opinion and the figure arrived at by him were influenced strongly by his keen desire to substantiate the assessed value and by his frame of experience as an expert for the city. His background indicates that he never owned, sold or managed comparable property.
I was much impressed with Mr. Levy, petitioner’s expert, both by reason of his background and type of experience, as well as his forthright and intelligent manner of testifying. His conclusion as to the value of the property included reference to sales of comparable property (cf. Matter of Sewdon Realty Corp., 81 N. Y. S. 2d 427). Mr. Weber, although not an articulate witness, exhibited broad experience in related types of properties.
The expert testimony indicated that the building is in excellent condition, has an excellent location rentalwise, being in the heart of the millinery district, with strong rental prospects.
*153 While I was impressed by Mr. Levy’s testimony, I feel that his opinion as to value was somewhat colored by anticipated higher rentals and, therefore, inflated.
On the basis of all the evidence before me, including the assessment history of the property, I am satisfied that the statutory presumption as to the current assessment value has been overcome by the proof and I find that the fair value of the property is $1,250,000. I also find that the building is a sufficient improvement on the land and, therefore, under the statute, the landlord is entitled to a net annual of 8% on the fair value of the entire property, or $100,000. To this sum should be added the cost of maintenance and operation, here stipulated to be $106,763.08, making a total of $206,763.08, from which must be deducted $858.34, the stipulated nonrental income (Matter of Rector, Churchwardens and Vestrymen of Trinity Church in City of N. Y., 305 N. Y. 860) for a total allowable return of $205,904.74. Dividing this amount by 123,559, the total number of rentable square feet, we find that the fair rental value per square foot is $1.6664.
• Applying the relative rental values given by the tenants’ expert, Mr. Meltzer, we find that the tenants involved in this proceeding occupy the following weighted areas:
Relative Rental Space "Value of Tenant’s Weighted Tenant Occupied Space Sq.ft. Area De Witt Davidson 7th floor 3.37 4163.94 d/b/a Etta-Leen Hats rear Brandt Millinery Co., Inc. 8th floor 6.74 8327.88 Morris Schonfeld & Morris 9th floor 2.22 2743.01 Schlosser d/b/a Bryn-Mawr Hat Company rear Betmar Hats Inc. 10th floor front 3.42 4225.72 Samuel & Sara Goldbaum 10th floor 3.32 4102.16 d/b/a Lily Hat Co. rear Joe Cohn Hats Ins. 11th floor 6.51 8043.69 Dorchester Hat Company 12th floor 3.28 4052.74 Inc. front Herbert Bentley Inc. 12th floor 3.23 3990.96 rear
Applying the fair rental value per square foot of $1.6664 to the weighted area occupied by these tenants, it appears that Brandt Millinery Co., Inc., presently paying annual rental of $14,000; Morris Schonfeld and Morris Schlosser, doing business as Bryn-Mawr Hat Company, presently paying annual rental of $5,000; and Joe Cohn Hats Inc., presently paying rental of $13,947, are all paying an annual rental in excess of the fair rental value per square foot, and as to them, the petition is dismissed.
*154 Applying the square-foot formula to the space occupied by the remaining tenants, they should pay the following per annum rents:
De Witt Davidson d/b/a Etta Leen Hats...................... $6,938.79
(an increase of $338.79 over present rental of $6,600)
Betmar Hats Inc............................................ $7,041.74
(an increase of $441.74 over present rental of $6,600)
Samuel & Sarah Goldbaum d/b/a Lily Hat Co.................. $6,835.84
(an increase of $235.84 over present rental of $6,600)
Dorchester Hat Company Inc................................. $6,753.49
(an increase of $453.49 over present rental of $6,300)
Herbert Bentley Inc......................................... $6,650.54
(an increase of $500.54 over present rental of $6,150)
In no case is the increased annual rental more than 15% greater than the present annual rent. The increases are to be retroactive as of the date of the filing of the petition.
The application is accordingly granted. Settle judgment and order in accordance herewith.