FÉLIX MEJÍAS SANTANA, peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. J. M. ALMODÓVAR, JUEZ, demandado; DOLORES G. NADAL DE GÓMEZ ET ALS., interventores.

Número 2362.

*Reasignado:* 6 de febrero de 1961. *Resuelto:* 3 de mayo de 1961.

*Juan T. Peñagarícano, Víctor M. Marchán, Abraham Freyre* y
*Nieves Agostini de Torres,* abogados del peticionario; *Rodrí-
guez Ema & Rodríguez Ramón,* abogados de los interventores.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del
Tribunal.

A solicitud del Administrador de Estabilización Eco-
nómica expedimos un auto de certiorari para revisar una
sentencia dictada por el Tribunal Superior de San Juan por
la cual se dejaron sin efecto varias órdenes finales de dicho
funcionario, de fecha 11 de julio de 1956, fijando cánones
máximos de alquiler para varios locales comerciales sitos en
la Calle Post Núm. 4, de Mayagüez.

A los fines de resolver este recurso es necesario
que hagamos un recuento de la legislación aprobada en rela-
ción con la facultad del Administrador para la fijación de
cánones de arrendamiento desde la aprobación de la Ley
Núm. 464 de 25 de abril de 1946 (Leyes, pág. 1327, 17

L.P.R.A. sec. 181 et seq.). La autorización legislativa fue concedida en virtud del artículo 6 de dicha ley (17 L.P.R.A. sec. 186), que ha sido enmendado por las Leyes Núm. 1 de 16 de julio de 1946 (Leyes (2), pág. 3), Núm. 37 de 22 de julio de 1947 (Leyes (2), pág. 141), Núm. 201 de 14 de mayo de 1948 (Leyes, pág. 575) y la Núm. 88 de 21 de junio de 1955 (Leyes, pág. 369).([1]) Precisa, además, que fijemos desde ahora, los tres distintos conceptos de canon o alquiler a que se refiere la ley: 1) canon *básico*, que es el alquiler que se pagaba en 1 de octubre de 1942, tanto en locales destinados a vivienda como a fines o propósitos comerciales;([2]) 2) canon *razonable*, que es el alquiler que se fija por o se autoriza a fijar al Administrador, en determinados casos que discutiremos más adelante; y 3) canon *comparable*, que es el alquiler que bajo determinadas circunstancias puede establecer el Administrador a base de una comparación con los alquileres que prevalecían en Puerto Rico en 1 de octubre de 1942 para locales o viviendas similares.

### Propiedades que Estaban Arrendadas en 1 de Octubre de 1942

El *alquiler básico* para estas propiedades es el canon que se pagaba en 1 de octubre de 1942.([3])

La ley autoriza al Administrador a fijar *alquileres razonables* en los siguientes casos:

*a*) Cuando así se justifique por razón de 1) mejoras de importancia capital;([4]) 2) aumento o reducción de mobiliario,

---

([1]) En el curso de la opinión nos referiremos a estas leyes por su número y el año de aprobación únicamente.

([2]) Para los fines de esta opinión, y excepto indicación expresa en contrario, "propósitos", "fines", "cánones" o "locales" *comerciales*, se refiere también a industria o negocios.

([3]) Cuando se hubiere fijado por convenio anterior a dicha fecha un canon mayor o menor para cualquier período posterior a octubre 1, 1942, el alquiler básico será éste.

· ([4]) De *conformidad con* el artículo 5(*a*) (1) del Reglamento para Locales Comerciales que comenzó a regir en 1 de noviembre de 1946, se entiende por mejora capital "aquella que resulta de una adición estruc-

equipo o accesorios; 3) aumento o reducción en los servicios o suministros; 4) deterioro de la vivienda o del edificio arrendado; y, 5) aumento en las contribuciones territoriales.

A partir del 14 de mayo de 1948, fecha de vigencia de la Ley 201 de ese año, ningún aumento que se conceda en virtud de estas disposiciones, excederá el alquiler básico en más de un quince (15) por ciento. Esta limitación, sin embargo, no es aplicable a los casos de edificaciones ubicadas en la zona antigua o histórica que hayan sido objeto de obras sustanciales para conservar las características de la época colonial española (Ley 88 de 1955).

b) Cuando por razón de parentesco o de otras relaciones personales o especiales entre el inquilino y el propietario o debido a circunstancias peculiares, (5) el alquiler devengado en 1 de octubre de 1942 era sustancialmente más bajo que el devengado para edificaciones similares;

c) Cuando la propiedad se amuebla después del 1 de octubre de 1942, el Administrador podrá autorizar un aumento en el canon básico. Hasta el 22 de julio de 1947, fecha de vigencia de la Ley 37 de ese año, este aumento no podía exceder del veinte (20) por ciento del alquiler.

d) Cuando el inquilino tuviere una opción de compra convenida con anterioridad al 1 de octubre de 1942 y se ha estipulado que los pagos se acreditarán al precio de compra. Ahora bien, si la opción no es posteriormente utilizada por el inquilino, y el alquiler fuere mayor que los prevalecientes en dicha fecha, el Administrador, a petición del inquilino, podrá fijar el alquiler máximo a base de los alquileres prevalecientes en octubre 1 de 1942. (6)

e) Hasta que comenzó a regir la Ley Núm. 201 de 1948, el Administrador podía aumentar el canon de edificaciones destinadas a propósitos comerciales según la importancia comercial de los pueblos y zonas en que estén radicadas tales edifi-

---

tural, un mejoramiento estructural o una rehabilitación completa". Véase, además el artículo 11(e) del Reglamento de Inquilinato (17 R. & R. P. R. sec. 186–11(e), efectivo desde el 12 de enero de 1959.

(5) El Reglamento para Locales Comerciales que comenzó a regir en noviembre 1 de 1946 consideraba "el aumento sustancial en el número de subinquilinos" como una de las circunstancias peculiares que daba margen al aumento del canon básico.

(6) Art. 5(c) (6) del Reglamento para Locales Comerciales.

caciones y su costo de construcción, pero en ningún caso el aumento podía exceder del cincuenta (50) por ciento del canon existente en octubre 1 de 1942.(6a)

f) Hasta que entró en vigor la Ley Núm. 201 de 1948, cuando, a juicio del Administrador, el alquiler prevaleciente en 1 de octubre de 1942, fuere excesivo, irrazonable y opresivo.

### Propiedades que no Estaban Arrendadas en 1 de octubre de 1942

En estos casos no existe un alquiler básico, y el Administrador está facultado para fijar un canon *comparable*, o sea a base de los alquileres que prevalecían en Puerto Rico en octubre 1 de 1942 para locales o viviendas similares. Esta misma norma se aplicó en los casos de construcciones posteriores a dicha fecha hasta la aprobación de la Ley 201 de 1948 que autorizó la fijación de alquiler en el caso de *nuevas construcciones*, no ya a base de los cánones prevalecientes en octubre de 1942 sino sobre la base del costo de construcción de dicha vivienda o edificio, con la limitación de que en ningún caso el canon excederá del doce (12) por ciento del costo total, computado por una anualidad.(7)

(6a) La Ley 201 de 1948 dispuso que sí se hubiere efectuado un ajuste del alquiler de un local comercial aumentando el canon básico en más de un quince (15) por ciento, y el inquilino alegare o probare que este aumento no está justificado por mermas en los negocios, pérdidas o desajustes resultantes de la post guerra, o por cualquier causa que contribuya a reducir sustancialmente sus ingresos, el Administrador podía fijar un canon que no excediera el canon básico o de comparación en más de un quince (15) por ciento.

(7) Por disposición expresa del artículo 24 de la Ley de Alquileres Razonables de 1946, (17 L.P.R.A. sec. 214), según enmendada por las Leyes Núm. 61 de 30 de abril de 1948 (Leyes, pág. 123) y la Núm. 7 de 19 de agosto de 1948 (Leyes, pág. 205) se declararon exentas de las disposiciones sobre fijación de rentas las edificaciones para fines comerciales que comenzaran a edificarse efectivamente en el transcurso del año 1946 y que se terminaran dentro de un año del comienzo efectivo de la obra, y las edificaciones destinadas a alquiler para viviendas que comenzaran a edificarse dentro del término indicado a partir de la fecha en que cesó el control federal de alquileres (31 de julio de 1953). *Blanes* v. *Tribunal de Distrito*, 71 D.P.R. 325 (1950); *Ledesma, Admor.* v. *Tribunal de Distrito*, 71 D.P.R. 87 (1950); *Aponte* v. *Tribunal de Distrito*, 68 D.P.R. 839 (1948). La Ley 201 de 1948, supra, específicamente esta-

*Solares con Edificaciones Pertenecientes a Distinto Dueño*

Hasta la aprobación de la Ley 37 de 1947 la determinación del alquiler razonable de solares en los cuales ubicaban edificaciones pertenecientes a distintos dueños no podían exceder del doce (12) por ciento del valor de tasación del mismo. A partir de la vigencia de esta última ley, se rige por "las normas fijadas por la ley para viviendas o edificios dedicados a comercio, según fuere el caso." [8]

■■ El expediente administrativo revela que en 14 de noviembre de 1946 se presentó una planilla de inscripción del local a que se refiere el presente recurso y en la misma se hizo constar que el canon de arrendamiento tanto en 1 de octubre de 1942, como en 17 de julio de 1946, [8a] era de $116.67 mensuales. Resulta pues claro, que este local tenía un canon *básico* de $116.67, que solamente podía ser reajustado por alguna de las circunstancias que hemos enumerado anteriormente al discutir la facultad del Administrador para fijar alquileres *razonables* a propiedades que estaban arrendadas en 1 de octubre de 1942. En virtud de la planilla presentada, el Administrador determinó que el canon máximo del local era de $116.67. Este local consistía de un amplio solar y una construcción antigua de ladrillos, que el inquilino Arbona Hnos., Inc., destinaba para una fábrica de galletas. Este inquilino ocupó la propiedad desde 1937 hasta 1952, y durante todo este período el propietario ni gestionó ni obtuvo ningún aumento en el canon básico. Dicho inquilino hizo

---

tuyó que no se considerarían como "nuevas edificaciones" exentas ninguna mejora capital, reconstrucción del edificio, o conversión de vivienda en local comercial o de local comercial en vivienda. Por disposición de la Ley Núm. 3 de 10 marzo de 1958 (Leyes, pág. 4, 17 L.P.R.A. sec. 214 a) también se declararon exentos los edificios antiguos localizados en la zona histórica que sean objeto de mejoras, reconstrucción o restauración.

[8] La ley no controla el arrendamiento de solares baldíos en que no exista ningún edificio o local, aunque tales solares estén en la zona urbana y se usen para fines comerciales e industriales. *Riera* v. *Tribunal Superior*, 79 D.P.R. 635 (1956). Cf. *Igartúa* v. *Ruiz*, 73 D.P.R. 354 (1952).

[8a] El extinto Consejo Ejecutivo declaró que la Ley Núm. 464 de 1946 comenzaría a regir en cuanto a locales comerciales en 17 de julio de 1946. (Art. 27 de la Ley Núm. 464 de 25 de abril de 1946.)

mejoras por valor de $19,520.25 durante el término del arrendamiento (Vista de marzo 18 de 1955, pág. 31), y en el local que ocupa actualmente bajo el nombre de Sucrs. de Blanes, Inc., ha hecho una inversión adicional de $8,000. (Id., pág. 46.)

Al desocuparse el inmueble, el propietario lo subdividió en 1953 en cinco locales, y procedió a arrendar cuatro de ellos mediante el pago de un canon total de $950 mensuales.(⁹) *Los inquilinos reconstruyeron* los locales utilizando la estructura vieja, y según se alega, uno de ellos invirtió una suma de aproximadamente $6,000. (Id., pág. 59.) En junio 23 de 1954 el inquilino Ruiz se querelló de que el canon que se le cobraba era excesivo, e hizo referencia en su solicitud de rebaja, al canon básico que había pagado Arbona Hnos., Inc. En 6 de octubre de 1954 el propietario radicó una planilla de inscripción del local que ocupaba Ruiz, y además de hacer constar el área que éste ocupaba, informó que la *construcción* era de fecha anterior al 1 de octubre de 1942. En la inscripción del local de Caribbean Electric Inc. se dijo que "este es un solar . . . donde dicha corporación ha instalado un establecimiento comercial . . ." En 10 de diciembre siguiente el propietario presentó una declaración de *inscripción de solares*, en la cual hizo constar entre otras cosas, que "el local está dedicado a comercio, es propiedad de los dueños del solar, pero fue reparado por el arrendatario, según convenio", y que "antes era un patio y formaba parte de una finca grande".

De todo lo expuesto se deduce que no sólo se trata de un local que tenía un alquiler básico de $116.67 mensuales, sino que no era una *nueva construcción*, y que si alguna parte sustancial se había reconstruido, la obra la habían realizado los inquilinos y no el propietario. A pesar de esta situación de hechos, el Administrador, a los fines de resolver sobre

(⁹) Los inquilinos eran David Ruiz ($225), Delia Asencio ($225), Caribbean Electric Corp. ($300) y Sucrs. de Blanes ($200). Había un local desocupado.

la solicitud de rebaja de alquiler presentada por el inquilino Ruiz, prefirió considerar el caso como el de una *construcción nueva* hecha después del 1 de octubre de 1942, e instruyó para que se fijara el canon a base de la computación de un doce (12) por ciento anual del costo de construcción y del valor del solar.[10]   Se celebró la vista correspondiente, y en la misma se convino que la estructura vieja tenía un valor depreciado de $19,000 [11]   La discrepancia surgió en cuanto al valor atribuible al solar, pues mientras el Administrador insistió en considerar *únicamente* el valor reajustado de tasación para fines contributivos que ascendió a $31,675.00, el propietario sostuvo que tenía que considerarse el *valor en el mercado* del solar, [12] y al efecto presentó prueba pericial

---

[10] El Administrador explica su actuación en las siguientes palabras: "Animado por un espíritu de liberalidad en beneficio de los caseros y en virtud del contraste ofrecido por las rentas que cobraba el casero ($950) y las que hubiera resultado de la operación aritmética antes indicada (división del canon básico de $116.67 entre los cinco locales)".

[11] El propietario consistentemente se refiere a esta cifra como "el costo de construcción de la edificación". Sin embargo, en el interrogatorio al perito se refirió a "la forma estructural antigua". (Vista de 23 de marzo de 1955, pág. 15.)   En la vista administrativa de 6 de abril de 1956, el examinador Lic. Freyre, hizo constar que "se somete por el Lcdo. Benjamín Rodríguez Ramón, en representación del casero, y por el Lcdo. Celedonio Medín Lozada, en representación del inquilino Sr. Ruiz, una cantidad de $19,000 como *costo depreciado* del edificio original" (pág. 32).

Como cuestión de hecho el ingeniero Canals valoró *toda* la estructura en $44,812 y le atribuyó una depreciación entre un 20 y un 25 por ciento, para concluir que el valor de la estructura era de $35,000 a $36,000.   A esta suma le restó el valor que a su juicio tenían las obras que hicieron los inquilinos, que estimó en $15,000, y concluyó que el valor de la estructura del propietario, "*de todo lo viejo que había allí*," era de $18,000 a $21,000 (Id., págs. 14 y 15).   Ratificó que en esta valuación no se incluyó lo que él atribuye a la "*construcción nueva*" realizada por los inquilinos (Id., pág. 17).

[12] Debemos aclarar que la ley no autoriza *expresamente* a incluir el valor del solar a los fines de determinar el canon en los casos de construcciones posteriores al 1 de octubre de 1942, y que se limita a autorizar que se utilice como base "el costo de construcción". *A los fines de evitar cualquier reparo de privación de la propiedad sin el debido procedimiento de ley,* el Administrador ha adoptado la práctica de considerar el valor del solar para la fijación del canon. El artículo 6(*a*)(7) del Reglamento de Inquilinato de 1959 (17 R. & R. P. R. sec. 186-6(*a*)(7))

para establecerlo entre $75,000 y $92,000.([13])    A base de la fórmula utilizada por el Administrador, quien descartó totalmente la evidencia sobre el valor en el mercado del solar, se fijaron cánones para los distintos locales que ascendieron a $462.80.

El propietario recurrió al Tribunal Superior e impugnó las órdenes. Se dictó sentencia dejándolas sin efecto y devolviendo el caso a la Administración por haber ésta cometido el error de no considerar la prueba que tuvo ante sí sobre el valor en el mercado de los solares.

En *Coll* v. *Picó*, ante, pág. 27, 36–37 (1960) expusimos hace sólo unos meses que ninguna estipulación o admisión de las partes puede inhibir a un tribunal en el ejercicio de su función de interpretar y aplicar la ley, aun cuando en cuanto se refiere a los hechos y a la prueba tales estipulaciones o admisiones normalmente obligan al juez y a las partes. Una de las justificaciones que se adujeron al exponer tal doctrina es que "existen obvias *razones de orden público* que impiden a los tribunales dictar fallos basados en normas erróneas de derecho, aunque éstas surjan de una estipulación suscrita por las partes". Por eso rechazamos la interpretación que el Secretario de Hacienda había hecho de las disposiciones del artículo 291(*i*) del Código Político al efecto de incluir los instrumentos quirúrgicos de un dentista movidos o usados exclusivamente a mano entre aquellos exentos de contribución. Posteriormente, en *Cooperativa Cafeteros de Puerto Rico* v. *Gobierno de la Capital*, ante, pág. 51 (1961), nos negamos a aceptar una interpretación

dispone que "El valor del solar, para los fines de fijación de rentas, se determinará en la siguiente forma: (*A*) Se tomará el costo del solar que aparezca de la escritura otorgada a favor de la persona que construyó o para quien se construyó, o el de tasación para fines contributivos, elevado al ciento por ciento, el que de los dos sea mayor. (*B*) . . . "

([13]) El perito presentado por el propietario incurrió en un error de cálculo y dijo que el valor mínimo era de $65,000, a base de restarle un 20 por ciento a la valoración anterior de $92,000. Una simple operación demuestra que el resultado debe ser $73,600. Posteriormente hizo referencia a esta suma de $73,000 (Id., pág. 16).

de la Ley de Patentes Municipales hecha por dicha entidad demandada que hubiese excluido el negocio de la demandante de la aplicación de dicha ley, y resolvimos en contrario, que el mismo estaba sujeto al pago de patente bajo la clasificación de "tienda mixta".

Nuevamente nos vemos obligados a recurrir a la doctrina enunciada para aplicarla al presente caso. Los hechos demuestran claramente que el Administrador utilizó una norma incorrecta para determinar y fijar el canon de los locales comerciales a que se refiere el procedimiento ante la agencia administrativa. La prueba señala sin lugar a dudas que no se trata de un caso de una nueva edificación construida por el propietario con posterioridad al 1 de octubre de 1942, única situación en que la ley le autoriza a considerar para la fijación del canon el costo de construcción del edificio, y por interpretación administrativa, el valor del solar. El objeto del arrendamiento es un solar de 1650.20 metros cuadrados que contenía una edificación que para poder ser utilizada por los inquilinos tuvo que ser mejorada sustancialmente por éstos. Como esa propiedad estaba arrendada en 1 de octubre de 1942, el Administrador no puede ignorar este alquiler básico, y sólo podía reajustarlo en alguno de los supuestos que mencionamos anteriormente en esta opinión. Es posible también que el Administrador determine que en realidad se trata de alquiler de unos solares urbanos, y en tal caso, no estarían sujetos al control administrativo, *Riera* v. *Tribunal Superior*, supra.

En *Peñagarícano, Admor.* v. *Tribunal Superior*, 81 D.P.R. 877 (1960) resolvimos que el Administrador de Estabilización Económica carece de facultades en ley para sustituir retroactivamente por otro razonable el canon básico que se pagaba en 1 de octubre de 1942, pero dijimos que no podíamos modificar órdenes administrativas—en dicho caso, de reembolso de alquileres pagados en exceso—si los inquilinos perjudicados no solicitan la revisión de las mismas ante el Tribunal Superior. En el presente caso, como los

inquilinos no objetaron las órdenes del Administrador, nos limitaremos a revocar la sentencia dictada por el Tribunal Superior dejando sin efecto las órdenes de fijación de alquileres dictadas por el Administrador, y que fueron impugnadas únicamente por el propietario.

No es necesario, por tanto, que resolvamos dentro del presente procedimiento si el Administrador puede fijar el valor del solar a base de la tasación contributiva, prescindiendo en absoluto de prueba sobre el valor en el mercado del mismo. ([14])

Opinión concurrente del Juez Asociado Sr. Santana Becerra.

Al concurrir en la decisión de este caso deseo dejar sentado lo siguiente:

(1) No siendo ello necesario por la forma en que hemos dispuesto del caso, me abstengo de expresar criterio, —aun de la manera en que por vía de aclaración se expone en el escolio (12) de la Opinión del Tribunal, y de la manera implícita en que surge del párrafo final de la misma, —en cuanto a si bajo el artículo 6 de la Ley de Alquileres Razonables se dispone que para la vivienda o edificación construida posteriormente al 1ro. de octubre de 1942 el Administrador fijará el alquiler razonable "a base del coste de construcción de dicha vivienda o edificio", procede incluir el factor solar, sea su costo o su valor; abstención ésta que creo de mayor rigor si se intima que en no hacerlo hay envuelta una cuestión constitucional de privación de la propiedad sin el debido procedimiento de ley. Dada la pauta legislativa, éste es un punto de importancia en la filosofía económica de la Ley de Alquileres, particularmente si el solar de la nueva edificación ya se poseía con anterioridad al 1ro. de octubre de 1942 como señala este caso, que este Tribunal no ha resuelto en la acción adecuada.

([14]) Véase, *Pueblo* v. *Amadeo*, ante, pág. 102 (1961); cf. McK. Unconsol. Laws (N. Y.) secs. 8524, 8554 y 8584; *Application of No. 1 West 39th St. Corp.*, 178 N.Y.S.2d 141 (1958); *Application of 1359 Broadway Associates*, 134 N.Y.S.2d 235 (1954).

(2) No invocaría el caso de *Coll* v. *Picó*, ante, pág. 27, para disponer de éste. Aunque no es sitio apropiado para expresar mi criterio sobre dicho caso, en la decisión del cual no intervine, creo que sus pronunciamientos no deben crecer o seguir expandiéndose. De todos modos, no me parece que se trata aquí de una posición interpretativa de la ley que presentaría una cuestión de derecho, sino de una *determinación de hecho* errónea del Administrador al disponer del caso como uno en donde existía una nueva edificación cuando en realidad no la había.

Estoy autorizado por los Jueces Asociados Sres. Belaval y Hernández Matos para hacer constar que ellos concurren en el párrafo (2) anterior.